[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} On June 14, 2000, appellant William C. Ringle's license to practice pharmacy was summarily suspended by the Ohio State Board of Pharmacy ("Board") pursuant to R.C. 3719.121(A), which provides that "* * * the license, certificate, or registration of any * * * pharmacist * * * who is or becomes addicted to the use of controlled substances shall be suspended by the board that authorized the person's license, certificate, or registration until the person offers satisfactory proof to the board that the person no longer is addicted to the use of controlled substances." Ringle's original notice for hearing and summary suspension order was brief. However, on September 26, 2000, the Board sent Ringle an amended notice which contained 28 pages of statements and allegations. On the same date, a 27-page notice of opportunity for hearing was issued to appellant "The Medicine Shoppe," the pharmacy which Ringle and his wife owned and operated.[1]
 {¶ 2} Ringle's summary suspension and the Board's subsequent action against the appellants in this case was the result of Ringle's addiction to drugs, his practice of pharmacy while impaired by the use of controlled substances, his theft of almost 18,000 doses of controlled substances, his failure to keep records of controlled substances, his failure to maintain current federal and state laws on the premises, and his sale of controlled substances to customers without a legitimate medical purpose. As a result of the investigation conducted by the Board, Ringle was also indicted by a Franklin County Grand Jury for 14 counts of felony theft of drugs in violation of R.C. 2913.02. Ringle pled guilty to all 14 counts on February 26, 2001.
 {¶ 3} A combined hearing on both permanent licensure cases was held on April 3, 2001, before the full Board, which consists of nine members, the majority of whom are licensed pharmacists in good standing. During the hearing, the Board introduced over 50 exhibits and called two witnesses, Chris Reed, Board Compliance Agent, and Robert Amiet, R.Ph., Board Compliance Specialist. Ringle testified on behalf of the appellants, and presented four character witnesses and six exhibits.
 {¶ 4} After a full and complete hearing on May 18, 2001, the Board unanimously voted to revoke Ringle's license to practice pharmacy, in addition to The Medicine Shoppe's terminal license to distribute dangerous drugs. Pursuant to R.C. 119.12, appellants appealed the Board's decisions to the Franklin County Court of Common Pleas, where both appeals were consolidated for review. After being fully briefed by the parties, and after having thoroughly considered the record before it, on February 13, 2002, the trial court issued a well-reasoned decision in which it concluded that the Board's decision and sanction in each case was supported by reliable, probative, and substantial evidence.
 {¶ 5} Appellants now appeal the decision of the trial court, asserting the following two assignments of error:
 {¶ 6} "1. The lower court erred as a matter of law in upholding the Board's termination of the licenses because all of the violations flowed directly out of Ringle's addiction, he has successfully completed a drug treatment program and he is no longer addicted to controlled substances.
 {¶ 7} "2. The lower court erred as a matter of law by upholding the Board's decision in the absence of reliable, probative and substantial evidence."
 {¶ 8} In its order revoking Ringle's license, the Board, after having heard the testimony and observed the demeanor of the witnesses, and after having considered the evidence, weighing the credibility thereof, made the following findings of fact:
 {¶ 9} "(1) Records of the State Board of Pharmacy indicate that William C. Ringle was originally licensed in the state of Ohio on August 4, 1976, pursuant to examination, and that William C. Ringle's license to practice pharmacy was summarily suspended effective June 14, 2000. Records further indicate that William C. Ringle is the owner and the Responsible Pharmacist at The Medicine Shoppe, 3410 Cleveland Avenue, Columbus, Ohio pursuant to Sections 4729.27 and 4729.55 of the Ohio Revised Code and Rule4729-5-11 of the Ohio Administrative Code.
 {¶ 10} "(2) William C. Ringle is addicted to liquor or drugs or impaired physically or mentally to such a degree as to render him unfit to practice pharmacy, to wit: William C. Ringle admitted to stealing controlled substances for his personal use; William C. Ringle began abusing drugs approximately two years after he opened The Medicine Shoppe; William C. Ringle would ingest approximately 100mg of Methylphenidate and a `few' Adderall or Dexedrine daily; and William C. Ringle practiced pharmacy while being impaired. Further, William C. Ringle made contact with the Pharmacists Rehabilitation Organization, Inc. for treatment of his abuse problem. Such conduct indicates that William C. Ringle falls within the ambit of Sections 3719.121(A),3719.121(B), and 4729.16(A)(3) of the Ohio Revised Code.
 {¶ 11} "(3) William C. Ringle did, from on or about November 16, 1997, through April 9, 1999, with purpose to deprive, knowingly obtain or exert control over controlled substances, the property of the terminal distributor, license number 02-0717300, beyond the express or implied consent of the owner, to wit: William C. Ringle stole the following controlled substances:
Drug CS Schedule Qty. % of Drug Supply
 Adderall 20mg II 1922 68.6% Adderall 10mg II 379 29.2% Dexedrine 15mg II 98 8.9% Methylphenidate ER 20mg II 675 29.3% Methylphenidate 10mg II 7097 64.5% Methylphenidate 5mg II 680 17.0% Cylert 37.5mg IV 343 55.1%
Such conduct is in violation of Section 2913.02 of the Ohio Revised Code.
 {¶ 12} "(4) William C. Ringle did, from on or about April 9, 1999, through May 15, 2000, with purpose to deprive, knowingly obtain or exert control over controlled substances, the property of the terminal distributor, license number 02-0717300, beyond the express or implied consent of the owner, to wit: William C. Ringle stole the following controlled substances:
Drug CS Schedule Qty. % of Drug Supply
 Adderall 20mg II 313 38.7% Adderall 10mg II 285 30.8% Dexedrine 15mg II 118 11.5% Methylphenidate ER 20mg II 359 25.9% Methylphenidate 20mg II 74 18.5% Methylphenidate 10mg II 4019 55.5% Methylphenidate 5mg II 1582 28.3%
Such conduct is in violation of Section 2913.02 of the Ohio Revised Code.
 {¶ 13} "(5) William C. Ringle did, as the Responsible Pharmacist, from November 16, 1997, through April 9, 1999, fail to keep a record of all controlled substances received and a record of all controlled substances administered, dispensed, or used other than by prescription, thereby failing to provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs, to wit: William C. Ringle kept no accurate record of sales for the following controlled substances and William C. Ringle has no controls and procedures to deter and detect theft and/or diversion of dangerous drugs:
Drug CS Schedule Qty. % of Drug Supply
 APAP/Codeine #4 III 796 16.6% Diazepam 10mg IV 266 8.9% Stadol Nasal Spray IV 11 bottles 2.5% Valium 10mg IV 135 4.7%
Such conduct is in violation of Rules 4729-9-05 and 4729-9-14 of the Ohio Administrative Code and Section 3719.07 of the Ohio Revised Code.
 {¶ 14} "(6) William C. Ringle did, as the Responsible Pharmacist, on April 9, 1999, and dates preceding, fail to maintain the minimum standards for a pharmacy, to wit: William C. Ringle, as the responsible pharmacist of The Medicine Shoppe, 3410 Cleveland Ave., Columbus, Ohio, did not possess a copy of current federal and state laws, regulations, and rules governing the legal distribution of drugs in Ohio. The pharmacy's law book had not been updated since January 1995. Such conduct is not in accordance with Rule 4729-9-02 of the Ohio Administrative Code.
 {¶ 15} "(7) William C. Ringle did, as the Responsible Pharmacist, on or about November 16, 1997, fail to keep a complete and accurate record of all controlled substances, to wit: the DEA inventory taken on November 16, 1997, failed to include Schedule II controlled substances. Further, the inventory did not specify who took it or whether it was taken prior to the opening or after the close of business. Such conduct is not in accordance with Rules 4729-5-11 and 4729-9-14 of the Ohio Administrative Code, Section 3719.07 of the Ohio Revised Code, and Section 1304.11 of the Code of Federal Regulations.
 {¶ 16} "(8) William C. Ringle did, as the Responsible Pharmacist, from March 13, 1997, through April 2, 1999, fail to properly execute controlled substance order forms, to wit: when drugs were received by the pharmacy pursuant to D.E.A. 222 forms, the forms were not completed as to the amount of controlled substances received nor the date received. The following twenty-two out of thirty-three D.E.A. 222 forms reviewed lacked such information: * * * [See May 18, 2001 Order of the State Board of Pharmacy, p. 8.] Such conduct is in violation of Rule 4729-9-14 of the Ohio Administrative Code, Section 3719.07 of the Ohio Revised Code, and Section 1305.06 of the Code of Federal Regulations.
 {¶ 17} "(9) William C. Ringle did, from on or about January 2, 1998, through June 13, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: William C. Ringle sold 201 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 8-12.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section2925.03(A) of the Ohio Revised Code.
 {¶ 18} "(10) William C. Ringle did, from on or about February 5, 1998, through June 14, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: William C. Ringle sold 138 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 13-16.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section2925.03(A) of the Ohio Revised Code.
 {¶ 19} "(11) William C. Ringle did, from on or about January 2, 1998, through June 14, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: William C. Ringle sold 223 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 16-21.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section2925.03(A) of the Ohio Revised Code.
 {¶ 20} "(12) William C. Ringle did, from on or about January 5, 1998, through February 2, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: William C. Ringle sold 167 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 21-24.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 21} "(13) William C. Ringle did, from on or about January 6, 1998, through June 13, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: William C. Ringle sold 198 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at 25-29.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 22} "(14) William C. Ringle did, from on or about January 3, 1998, through April 26, 2000, knowingly sell a controlled substance in an amount equal to or exceeding five times the bulk amount but in an amount less than fifty times that amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: William C. Ringle sold 79 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: [See id. at pp. 29-31.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 23} "(15) William C. Ringle did, on or about December 21, 1999, under the exemptions of Section 3719.15 of the Revised Code, sell to one person an exempt narcotic preparation included within Section3719.15 of the Ohio Revised Code, to wit: William C. Ringle sold more than one exempt narcotic preparation to the same patient when he knew or by reasonable diligence could have ascertained that such dispensing or selling would provide the patient, within forty-eight consecutive hours, with more than one preparation exempted by the provisions of Section3719.15 of the Revised Code. Such conduct is in violation of Rule4729-11-09 of the Ohio Administrative Code and Section 3719.16 of the Ohio Revised Code.
 {¶ 24} "(16) William C. Ringle did, on or about May 6, 2000, under the exemptions of Section 3719.15 of the Revised Code, sell to one person an exempt narcotic preparation included within Section 3719.15 of the Ohio Revised Code, to wit: William C. Ringle sold more than one exempt narcotic preparation to the same patient when he knew or by reasonable diligence could have ascertained that such dispensing or selling would provide the patient, within forty-eight consecutive hours, with more than one preparation exempted by the provisions of Section 3719.15 of the Revised Code. Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 3719.16 of the Ohio Revised Code.
 {¶ 25} "(17) William C. Ringle did, on or about February 1, 2000, under the exemptions of Section 3719.15 of the Revised Code, sell to one person an exempt narcotic preparation included within Section 3719.15 of the Ohio Revised Code, to wit: William C. Ringle sold more than one exempt narcotic preparation to the same patient when he knew or by reasonable diligence could have ascertained that such dispending or selling would provide the patient, within forty-eight consecutive hours, with more than one preparation exempted by the provisions of Section3719.15 of the Revised Code. Such conduct is in violation of Rule4729-11-09 of the Ohio Administrative Code and Section 3719.16 of the Ohio Revised Code.
 {¶ 26} "(18) William C. Ringle did, on or about February 15, 1999, under the exemptions of Section 3719.15 of the Revised Code, sell to one person an exempt narcotic preparation included within Section3719.15 of the Ohio Revised Code, to wit: William C. Ringle sold more than one exempt narcotic preparation to the same patient when he knew or by reasonable diligence could have ascertained that such dispensing or selling would provide the patient, within forty-eight consecutive hours, with more than one preparation exempted by the provisions of Section3719.15 of the Revised Code. Such conduct is in violation of Rule4729-11-09 of the Ohio Administrative Code and Section 3719.16 of the Ohio Revised Code."
 {¶ 27} Correspondingly, having heard and considered the evidence, the Board also issued an order revoking The Medicine Shoppe's license as a result of the following findings of fact:
 {¶ 28} "(1) Records of the State Board of Pharmacy indicate that, during the relevant time periods stated herein, you were the Responsible Pharmacist at The Medicine Shoppe Pharmacy, 3410 Cleveland Avenue, Columbus, Ohio pursuant to Rule 4729-5-11 of the Ohio Administrative Code and Sections 4729.27 and 4729.55 of the Ohio Revised Code.
 {¶ 29} "(2) The Medicine Shoppe did, on April 9, 1999, and dates preceding, fail to maintain the minimum standards for a pharmacy, to wit: The Medicine Shoppe did not possess a copy of current federal and state laws, regulations, and rules governing the legal distribution of drugs in Ohio. The Medicine Shoppe's law book had not been updated since January 1995. Such conduct is not in accordance with Rule 4729-9-02 of the Ohio Administrative Code.
 {¶ 30} "(3) The Medicine Shoppe did, on or about November 16, 1997, fail to keep a complete and accurate record of all controlled substances, to wit: the DEA inventory taken on November 16, 1997, failed to include Schedule II controlled substances. Further, the inventory did not specify who took it or whether it was taken prior to the opening or after the close of business. Such conduct is not in accordance with Rules4729-5-11 and 4729-9-14 of the Ohio Administrative Code, Section 3719.07
of the Ohio Revised Code, and Section 1304.11 of the Code of Federal Regulations.
 {¶ 31} "(4) The Medicine Shoppe did, from March 13, 1997, through April 2, 1999, fail to properly execute controlled substance order forms, to wit: when drugs were received by The Medicine Shoppe pursuant to D.E.A. 222 forms, the forms were not completed as to the amount of controlled substances received nor the date received. The following twenty-two out of thirty-three D.E.A. 222 forms reviewed lacked such information: * * * [See May 18, 2001 Order of the State Board of Pharmacy, p. 6.] Such conduct is in violation of Rule 4729-9-14 of the Ohio Administrative Code, Section 3719.07 of the Ohio Revised Code and Section 1305.06 of the Code of Federal Regulations.
 {¶ 32} "(5) The Medicine Shoppe did, from on or about January 2, 1998, through June 13, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: The Medicine Shoppe sold 201 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 7-11.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 33} "(6) The Medicine Shoppe did, from on or about February 5, 1998, through June 14, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: The Medicine Shoppe sold 138 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 11-14.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 34} "(7) The Medicine Shoppe did, from on or about January 2, 1998, through June 14, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: The Medicine Shoppe sold 223 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 14-19.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 35} "(8) The Medicine Shoppe did, from on or about January 5, 1998, through February 2, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: The Medicine Shoppe sold 167 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 19-23.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 36} "(9) The Medicine Shoppe did, from on or about January 6, 1998, through June 13, 2000, knowingly sell a controlled substance in an amount equal to or exceeding fifty times the bulk amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: The Medicine Shoppe sold 198 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 23-27.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 37} "(10) The Medicine Shoppe did, from on or about January 3, 1998, through April 26, 2000, knowingly sell a controlled substance in an amount equal to or exceeding five times the bulk amount but in an amount less than fifty times that amount when the conduct was not in accordance with Chapters 3719. and 4729. of the Ohio Revised Code, to wit: The Medicine Shoppe sold 79 bottles containing 120ml each of an exempt narcotic preparation to the same patient without a legitimate medical purpose: * * * [See id. at pp. 27-29.] Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 2925.03(A) of the Ohio Revised Code.
 {¶ 38} "(11) The Medicine Shoppe did, on or about December 21, 1999, under the exemptions of Section 3719.15 of the Revised Code, sell to one person an exempt narcotic preparation included within Section3719.15 of the Ohio Revised Code, to wit: The Medicine Shoppe sold more than one exempt narcotic preparation to the same patient when the pharmacy's employees knew or by reasonable diligence could have ascertained that such dispending or selling would provide the patient, within forty-eight consecutive hours, with more than one preparation exempted by the provisions of Section 3719.15 of the Revised Code. Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 3719.16 of the Ohio Revised Code.
 {¶ 39} "(12) The Medicine Shoppe did, on or about May 6, 2000, under the exemptions of Section 3719.15 of the Revised Code, sell to one person an exempt narcotic preparation included within Section 3719.15 of the Ohio Revised Code, to wit: The Medicine Shoppe sold more than one exempt narcotic preparation to the same patient when the pharmacy's employees knew or by reasonable diligence could have ascertained that such dispensing or selling would provide the patient, within forty-eight consecutive hours, with more than one preparation exempted by the provisions of Section 3719.15 of the Revised Code. Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section3719.16 of the Ohio Revised Code.
 {¶ 40} "(13) The Medicine Shoppe did, on or about February 1, 2000, under the exemptions of Section 3719.15 of the Revised Code, sell to one person an exempt narcotic preparation included within Section3719.15 of the Ohio Revised Code, to wit: The Medicine Shoppe sold more than one exempt narcotic preparation to the same patient when the pharmacy's employees knew or by reasonable diligence could have ascertained that such dispensing or selling would provide the patient, within forty-eight consecutive hours, with more than one preparation exempted by the provisions of Section 3719.15 of the Revised Code. Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 3719.16 of the Ohio Revised Code.
 {¶ 41} "(14) The Medicine Shoppe did, on or about February 15, 1999, under the exemptions of Section 3719.15 of the Revised Code, sell to one person an exempt narcotic preparation included within Section3719.15 of the Ohio Revised Code, to wit: The Medicine Shoppe sold more than one exempt narcotic preparation to the same patient when the pharmacy's employees knew or by reasonable diligence could have ascertained that such dispensing or selling would provide the patient, within forty-eight consecutive hours, with more than one preparation exempted by the provisions of Section 3719.15 of the Revised Code. Such conduct is in violation of Rule 4729-11-09 of the Ohio Administrative Code and Section 3719.16 of the Ohio Revised Code."
 {¶ 42} Pursuant to R.C. 119.12, a common pleas court must affirm the decision and sanction of an administrative agency if the decision is supported by reliable, probative, and substantial evidence and is in accordance with law. "This standard calls for two inquiries: a hybrid factual/legal inquiry, in which the agency's findings of fact are presumed correct, and a purely legal inquiry, in which questions of law are reviewed de novo." Moran v. Ohio Dept. of Commerce, Division of Real Estate (1996), 109 Ohio App.3d 494, 497.
 {¶ 43} Importantly, at this stage of an R.C. 119.12 appeal, our review is much more limited than the review conducted by the trial court. Specifically, when presented with an administrative appeal, an appellate court is called upon only to determine whether the common pleas court abused its discretion. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 44} In order to show that an abuse of discretion has occurred, appellants must demonstrate to this court appreciably more than that the trial court rendered a decision and judgment that is questionable or different than the decision this court would have reached had it decided the issue in the first instance or was even incorrect. The legal principle of an "abuse of discretion" connotes a decision or act which is more than incorrect or questionable. Rather, it connotes a decision which is clearly unreasonable, arbitrary, or unconscionable. Moran, supra.
 {¶ 45} In the process of reviewing the trial court's disposition of the appellants' administrative appeal, we must not surrender to the temptation to re-argue the matters entrusted to, and within the purview of the Ohio State Board of Pharmacy, in order to merely substitute our factual conclusions and judgment for those of the Board or the trial court. Pons, supra. Rather, "[w]hen reviewing a [Pharmacy] board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession." Id. at syllabus. Finally, when reviewing the appellants' assertion that the trial court abused its discretion, we are guided by a general presumption that the findings of the Board and trial court are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 46} We have carefully and thoroughly reviewed the record in this case and are completely informed of the evidence presented, as well as the analysis and conclusions reached by the Board and the trial court. Having done so, we are now prepared to address the appellants' assignments of error.
 {¶ 47} In the appellants' first assignment of error, appellants argue that the Board erred as a matter of law in revoking Ringle's license because he has undergone successful treatment for chemical dependency. According to Ringle, R.C. 3719.121 requires that his license be reinstated because he is no longer addicted to drugs and, therefore, he is entitled to possess a license to practice pharmacy. Appellant bases his argument upon the summary suspension provision of R.C. 3719.121(A), which provides:
 {¶ 48} "Except as otherwise provided in section 4723.28, 4723.35,4730.25, 4731.22, 4734.39, or 4734.41 of the Revised Code, the license, certificate, or registration of any * * * pharmacist * * * who is or becomes addicted to the use of controlled substances shall be suspended by the board that authorized the person's license, certificate, or registration until the person offers satisfactory proof to the board that the person no longer is addicted to the use of controlled substances."
 {¶ 49} According to Ringle, the last sentence of R.C. 3719.121(A), "until the person offers satisfactory proof to the board that the person no longer is addicted to the use of controlled substances," should be interpreted as a blanket requirement that the Board reinstate his license, or the license of any other pharmacist who, although once chemically dependent, offers some unqualified quantum of "evidence" that he or she is no longer chemically dependent or addicted to the use of controlled substances. However, Ringle's arguments to the contrary, we are unable to find that the trial court abused its discretion when it concluded that the law does not support Ringle's position, and that the Board acted within its authority when it voted to permanently revoke Ringle's license to practice pharmacy.
 {¶ 50} R.C. 2929.24(A) provides:
 {¶ 51} "The prosecutor in any case against any person licensed, certified, registered, or otherwise authorized to practice under Chapter 3719., 4715., 4723., 4729., 4730., 4731., 4734., or 4741. of the Revised Code shall notify the appropriate licensing board * * * of any of the following regarding the person:
 {¶ 52} "(1) A plea of guilty to, or a conviction of, a felony, or a court order dismissing a felony charge on technical or procedural grounds;
 {¶ 53} "(2) A plea of guilty to, or a conviction of, a misdemeanor committed in the course of practice or in the course of business, or a court order dismissing such a misdemeanor charge on technical or procedural grounds;
 {¶ 54} "(3) A plea of guilty to, or a conviction of, a misdemeanor involving moral turpitude, or a court order dismissing such a charge on technical or procedural grounds."
 {¶ 55} The foregoing requirement is echoed in R.C. 3719.12, which provides:
 {¶ 56} "Unless a report has been made pursuant to section 2929.24
of the Revised Code, on the conviction of a manufacturer, wholesaler, terminal distributor of dangerous drugs, pharmacist, pharmacy intern, dentist, chiropractor, physician, podiatrist, registered nurse, licensed practical nurse, physician assistant, optometrist, or veterinarian of the violation of this chapter or Chapter 2925. of the Revised Code, the prosecutor in the case promptly shall report the conviction to the board that licensed, certified, or registered the person to practice or to carry on business. * * *"
 {¶ 57} R.C. 3719.12 also provides that, "[w]ithin thirty days of the receipt of this information, the board shall initiate action in accordance with Chapter 119. of the Revised Code to determine whether to suspend or revoke the person's license, certificate, or registration."
 {¶ 58} Further, R.C. 4729.16 provides that:
 {¶ 59} "(A) The state board of pharmacy, after notice and hearing in accordance with Chapter 119. of the Revised Code, may revoke, suspend, limit, place on probation, or refuse to grant or renew an identification card, or may impose a monetary penalty or forfeiture not to exceed in severity any fine designated under the Revised Code for a similar offense, or in the case of a violation of a section of the Revised Code that does not bear a penalty, a monetary penalty or forfeiture of not more than five hundred dollars, if the board finds a pharmacist or pharmacy intern:
 {¶ 60} "(1) Guilty of a felony or gross immorality;
 {¶ 61} "(2) Guilty of dishonesty or unprofessional conduct in the practice of pharmacy;
 {¶ 62} "(3) Addicted to or abusing liquor or drugs or impaired physically or mentally to such a degree as to render the pharmacist or pharmacy intern unfit to practice pharmacy;
 {¶ 63} "(4) Has been convicted of a misdemeanor related to, or committed in, the practice of pharmacy;
 {¶ 64} "(5) Guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of any of the provisions of this chapter, sections 3715.52 to 3715.72 of the Revised Code, Chapter 2925. or 3719. of the Revised Code, or any rule adopted by the board under those provisions;
 {¶ 65} "* * *
 {¶ 66} "(C) As used in this section:
 {¶ 67} "`Unprofessional conduct in the practice of pharmacy' " includes any of the following:
 {¶ 68} "* * *
 {¶ 69} "(4) Knowingly failing to maintain complete and accurate records of all dangerous drugs received or dispensed in compliance with federal laws and regulations and state laws and rules; * * * [.]" (Emphasis added.)
 {¶ 70} As can be seen, the Board has wide latitude in deciding whether or not to grant, refuse to renew, suspend or revoke an individual's license to practice pharmacy in this state. Stated bluntly, R.C. 3719.121(A) does not necessarily provide a pharmacist who successfully participates in a drug rehabilitation program with a "get out of jail free" pass to license reinstatement. Indeed, looking back to R.C. 3719.121, we find in Section (C) that:
 {¶ 71} "On receiving notification pursuant to section 2929.24 or3719.12 of the Revised Code, the board under which a person has been issued a license, certificate, or evidence of registration immediately shall suspend the license, certificate, or registration of that person on a plea of guilty to, a finding by a jury or court of the person's guilt of, or conviction of a felony drug abuse offense; a finding by a court of the person's eligibility for intervention in lieu of conviction; a plea of guilty to, or a finding by a jury or court of the person's guilt of, or the person's conviction of an offense in another jurisdiction that is essentially the same as a felony drug abuse offense; or a finding by a court of the person's eligibility for treatment or intervention in lieu of conviction in another jurisdiction. The board shall notify the holder of the license, certificate, or registration of the suspension, which shall remain in effect until the board holds an adjudicatory hearing under Chapter 119. of the Revised Code."
 {¶ 72} We agree with the trial court's conclusion that the applicable law does not support Ringle's argument that the Board, after it holds the adjudicatory hearing called for in R.C. 3719.121(A), is then in any way required to reinstate an individual's license merely because that individual comes forward with some form and quantum of evidence that he or she is no longer chemically dependent.
 {¶ 73} As recognized by the Board in its findings of fact, Ringle committed many serious violations of the law governing the practice of his profession, including pleading guilty to 14 counts of felony drug theft involving his personal theft of almost eighteen thousand doses of Schedule II and IV controlled substances.[2] As the pharmacist in charge, Ringle also sold over one thousand bottles of cough syrup containing the narcotic codeine to six individuals between January 1998 and June 2000. He did so without a doctor's prescription, for an extended period of time, and contrary to the manufacturer's instructions which indicated that if a cough did not subside within seven days or is accompanied by a fever, the individual using the syrup should be directed to consult with a physician. Ringle also worked, dispensing dangerous drugs while impaired, failed to keep the required records of all controlled substances received and dispensed, failed to maintain current copies of the state and federal laws governing the practice of pharmacy, and failed to complete over 20 Drug Enforcement Agency forms applicable to controlled substances.
 {¶ 74} In view of the undisputed facts of this case, we are unable to conclude that the trial court abused its discretion when it concluded that the Board's unanimous decision to revoke the appellants' licenses is supported by reliable, probative, and substantial evidence, and is in all respects in accordance with law. In this instance, the trial court rendered a thorough, well-reasoned, and cogent decision. We find no abuse of discretion. Accordingly, appellants' first assignment of error is overruled.
 {¶ 75} In their second assignment of error, appellants maintain that the Board's order and penalty should be reversed because they are not supported by reliable, probative, and substantial evidence.
 {¶ 76} The first problem we find with the appellants' argument is that it asks this court to allow the appellants to re-argue the evidence presented to the Board in order to allow the appellants to challenge the findings and sanctions of the Board as ratified by the trial court. Specifically, appellants wish to have this court rule that the Board and the trial court incorrectly determined that the Board's order against the appellants on the issue of the sale of narcotic cough syrup is supported by reliable, substantial, and probative evidence. The temptation to do this must be rejected for, as noted above, this court is to determine whether the common pleas court abused its discretion in concluding the board's determination is supported by substantial, reliable and probative evidence, nor is it this court's prerogative to determine the penalty to be imposed.
 {¶ 77} Indeed, the court of common pleas in the first instance was precluded from modifying the penalty or sanction imposed by the Board once it determined that the penalty was authorized by law. Henry Café v. Bd. of Liquor Control (1959), 170 Ohio St. 233. In deciding whether the penalty or sanction was authorized by law, the trial court was only required to determine whether the sanction ordered for the infraction is lawful. This, in turn, only requires that "the sanction is within the realm of acceptable choices for the particular infraction. * * *" Hale v. Ohio State Veterinary Medical Bd. (1988), 47 Ohio App.3d 167, 169. It is well-settled that due deference should be given to the Board's expertise in dealing with the very matters placed before it in the context of this case.
 {¶ 78} The second flaw in the appellants' argument is their attempt to deftly dismiss all of the material findings of the Board except those having to do with the sale of narcotic cough syrup. As we have stated repeatedly, there were numerous undisputed violations of the law and of the standards governing the practice of pharmacy by the appellants in this case.
 {¶ 79} The Board heard testimony and took evidence that Ringle was admittedly addicted to and abused many different controlled substances for a substantial period of time prior to attempting to quit, and while continuing to practice in August 1998. Ringle claimed that he was drug free for approximately 16 months afterward; however, he admits that he once again began abusing drugs in January 2000. The uncontroverted evidence shows that Ringle stole over eleven thousand unit doses of Schedule II and IV controlled substances, which he abused from November 1997 to April 1999. Ringle admitted to stealing another approximately seven thousand unit doses of Schedule II drugs, which he used from April 1999 to May 2000. There is no question that Ringle knew and recognized that he had a substance abuse problem, as evidenced by his attempt to end his addiction without telling anyone. However, he was unable to do so, yet continued to practice pharmacy and dispense dangerous drugs while chemically dependent and under the influence. Only when his addiction was exposed did he seek appropriate medical treatment and plead guilty to 14 felony counts of drug theft. Not surprisingly, Ringle failed to keep a record of all of the controlled substances received and dispensed, failed to keep the required state and federal library materials, and failed to complete 22 of 23 required Drug Enforcement Agency forms.
 {¶ 80} Focusing solely on the sale of the narcotic cough syrup, appellants correctly maintain that under Ohio law, a pharmacist may sell an exempt Schedule V controlled substance to a customer without a prescription if there is a legitimate medical need, and if the customer furnishes information to the pharmacist which establishes a legitimate medical need for the controlled substance.
 {¶ 81} As set forth by the trial court in its February 13, 2002 opinion affirming the orders of the Board:
 {¶ 82} "It should be noted that many of the facts adduced at the administrative hearing, which took place before the full Pharmacy Board on April 3, 2001, are not in dispute. * * * Mr. Ringle as the pharmacist in charge, allowed six individuals, from January of 1998 to June of 2000, to purchase Schedule V cough syrups (cough syrups with codeine) more than one-thousand (1000) times. R.C. 3719.16 was referenced as to these violations, as well as Ohio Administrative Code ("OAC") 4729-11-09. * * *"
 {¶ 83} More specifically, the record shows that Ringle sold over one thousand bottles of narcotic cough syrup, an amount equal to 50 times bulk, to six customers. The Board found that Ringle made these sales although there was no legitimate medical purpose for the sales. The record also shows that Ringle sold more than one narcotic preparation to the same person in violation of what is known as the "forty-eight hour rule."
 {¶ 84} Appellants argue that there is "absolutely no evidence" that Ringle intended to sell the narcotic cough syrup for anything other than a legitimate medical purpose. However, the Board, which is composed mainly of licensed pharmacists, found otherwise. Having thoroughly reviewed the record, we are unable to accept the appellants' argument that the trial court abused its discretion when it concluded that the Board's finding was based upon substantial, reliable, and probative evidence.
 {¶ 85} Convincingly, it is undisputed that the Federal Drug Administration's approved labeling for the cough syrup sold by Ringle specifically contains a simple and straightforward warning which advises pharmacists in the first instance, as well as users of the narcotic syrup, that the recommended dose was not to be exceeded, and that, if the condition does not improve, that a physician should be consulted. In fact, during the hearing Ringle read from the product labeling, which stated in part: "[I]f symptoms do not improve within seven days or are accompanied by a fever, consult a doctor." However, appellants profited by Ringle's continuing to sell narcotic cough syrup to the same six individuals, some who only came into Ringle's pharmacy to purchase this item, over one thousand times, and over a time period greater than two years.
 {¶ 86} Appellants' argument to the contrary, the expertise of the Board members, in conjunction with the clear product dispensing, use instructions, and warnings, coupled also with the appellants' undisputed dispensing practices, was sufficient evidence from which the Board could have concluded that Ringle was improperly and unlawfully selling and dispensing narcotic cough syrup. Again, it was undisputed by the appellants that the narcotic products in question contained warnings that if the symptoms for which the medication was taken did not improve within seven days, or were accompanied by a fever, that a doctor should be consulted prior to further administration of the medication. It is hard to believe that appellants' sales were anything but knowing and willful given that Ringle: (1) sold over one thousand bottles to six individuals over a period of two and one-half years; (2) while never advising any of these individuals that the medication was being dispensed in contradiction to the FDA instructions; and (3) while never advising any of these individuals that they should consult a physician for their condition, which presumably either did not exist at all, or existed untreated for over two years. It is also undisputed that Ringle's dispensing practices remained the same regardless of whether he was abusing controlled substances at any given time.
 {¶ 87} Ringle repeatedly argues that his actions should be evaluated using a lesser standard of care, that of a drug addict, rather than the standard of care applied to other practicing pharmacists. However, the Board's findings and sanction in this matter demonstrate that in the practice of pharmacy, where a pharmacist could kill or seriously injure another by not adhering to standards of the profession, Ringle's decisions, choices, and acts, like those of all other individuals, have consequences. The fact that Ringle was impaired while voluntarily under the influence of drugs which he stole from his pharmacy does not obviate the consequences of his actions. Appellants' second assignment of error is therefore overruled.
 {¶ 88} Having thoroughly and carefully reviewed the record and the decision of the trial court, we are unable to conclude that the trial court abused its discretion when it found the Board's orders in this case supported by substantial, reliable, and probative evidence. Therefore, for the foregoing reasons, both of appellants' assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and TYACK, JJ., concur.
[1] The Medicine Shoppe was a licensed "terminal distributor of dangerous drugs." Such an entity is defined in R.C. 4729.01(Q) as: "* * * a person who is engaged in the sale of dangerous drugs at retail, or any person, other than a wholesale distributor or a pharmacist, who has possession, custody, or control of dangerous drugs for any purpose other than for that person's own use and consumption, and includes pharmacies, hospitals, nursing homes, and laboratories and all other persons who procure dangerous drugs for sale or other distribution by or under the supervision of a pharmacist or licensed health professional authorized to prescribe drugs."
[2] Schedule I substances are illegal, as they have been determined to have no beneficial medical value. Thus, Schedule II substances are the highest legally obtainable drugs, and are the most highly controlled substances due to their propensity for abuse and addiction.